## F. E. BELT v. STATE.

No. A-8998. March 27, 1936.
(56 Pac. [2d] 910.)

L. A. Pelley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was by information charged with the larceny of 2,800 pounds of cotton seed, of the value of $56.25, was tried and convicted of grand larceny, and his punishment assessed at confinement in the state penitentiary for a term of two years. Motion for new trial was filed, considered, and overruled, and the defendant has appealed to this court.

Joe Wheeless testified he lived at 1106 North Lee, Altus, Okla.; he was farming land eight miles north and three miles west of Altus; on the night of November 27, 1934, he missed between 50 and 60 sacks of cotton seed from his barn on the farm; he was in the barn on the 27th and the seed were there, and when he returned on the 28th they were gone. Mr. Wheeless had a negro on the farm by the name of E. J. Butler to take care of the stock; on the night the cotton seed was stolen a number of negroes were back and forth from the Wheeless farm to town and to the home of the defendant, F. E. Belt.

Joe Anderson, commonly known as Slick, after having pleaded guilty to the charge, testified for the state, and

said a number of negroes had gone to the Wheeless home and then back and forth to town and back to the defendant's. The defendant was asked by one of them if he would buy cotton seed, that they could take a truck and get them. On the morning of the 28th the defendant hauled a load of cotton seed to town and sold them to the Altus Cotton Oil Company, and received a check for $56.32; he cashed the check, and, when he returned home, he gave each of the negro men $9 and kept the remainder of the money received from the check; he said he had sold his own seed saved for planting.

Evidence was offered showing witnesses went to the barn of Wheeless, from which the cotton seed was taken, and examined the tracks of the truck, and came to defendant's barn and examined the casings on his truck, and they were apparently the same tracks as the tracks on the Wheeless place.

When the defendant was arrested, he had about $100 in his pocketbook, and gave an order to the sheriff for the money he had received on the check to return the same to the party who cashed the check.

The defendant, testifying in his own behalf, stated:

"I live one mile north of Olustee, and have lived there for 33 years; I farm 240 acres of land; I did not furnish a truck to the negro Joe Anderson, commonly called Slick, to go to the Wheeless place to steal the cotton seed, nor did I consent to sell the seed, or to aid or abet them in stealing the cotton seed; I had cotton seed out at my place; I sold cotton seed on the 28th day of November, 1934, to the Cotton Oil Mill Company; I sold 2,540 or 2,560 pounds, I forgot which; I had sold them cotton seed prior to that time; I know nothing about the theft of the cotton seed from Joe Wheeless."

On cross-examination defendant stated in 1934 he had 34 acres in cotton.

"The last fall I gathered one bale; on the 27th of November, 1934, I was playing dominoes with Slick, Joe Ingram, and the Wheeless negro; they said nothing to me about any cotton seed. My truck was in my barn on the night it was alleged the seed were taken, and was not out that night; I found some two or three chickens on my place that day that did not belong there. When E. J. Butler and Pinkie Belle returned to my place, the boys that were playing dominoes had gone out to try and find my cows that had gotten out. I caught the seed from six bales of cotton in 1933, and they run from 900 to 1,100 pounds to the bale. My seed was in the west bin of my barn; I took all the seed out of the barn."

Tom Morris testified on behalf of the defendant that he had raised cotton every year since he had been on the farm; in 1933 he sold him seed from three bales of cotton; Mr. Belt worked in gins at Olustee: "Yes, I have been a friend of Mr. Belts for a long time."

Jim Howard testified he was acquainted with Mr. Belt; "he was a farmer; he had cotton ginned at my gin in 1933; he took the seed from three bales out of his own cotton."

F. E. Belt was recalled and stated he got seed from three bales of cotton he traded for from Tom Moore, which made the seed from six bales of cotton he had taken home. Tom Moore corroborated Belt as to the purchase of the seed from three bales of cotton from him.

The defendant has assigned seven errors alleged to have been committed by the trial court. The first assignment of error is, the court erred in overruling the motion of the plaintiff in error for a new trial. This assignment embraces all the questions raised and discussed by the defendant. It is first insisted by the defendant that the court erred in overruling his demurrer to the information. With this contention we cannot agree. The information

charges the defendant with larceny in clear and concise language sufficient to advise the defendant of the charge against him, and the court did not err in overruling his demurrer to the information.

The defendant in his argument discusses at length the question of the failure of the state to corroborate the testimony of the negro, Joe or Slick Anderson, who testified to the taking of the cotton seed from the Wheeless farm in the defendant's truck to the home of the defendant. Anderson was an accomplice of the defendant if the defendant is guilty, and the court so instructed the jury. The question then to be determined is, Is there any competent testimony independent of the fact that a crime was committed to connect the defendant with the taking of the cotton seed? Two or more witnesses testify they went to the barn of Wheeless, from which the cotton seed were taken, and there examined the tracks of the car or truck, and then came to the home of the defendant, and the truck of the defendant was in the barn with casings upon it with the same tread or tracks they had seen near the Wheeless place. It is admitted by the defendant that the negro Slick and other negroes were at his house the night it is alleged the seed were taken, and that the defendant the next morning drove to the cotton seed mill and sold about 2,560 pounds, receiving therefor the sum of $56.32. The court in its instruction in part advised the jury:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. That such corroborating evidence may be circumstantial, and it is not necessary that the required corroborating evidence cover every ma-

terial point testified to by the said Joe Anderson, and it is sufficient if you find that the evidence of the witness Joe Anderson is corroborated in some material point which shows the connection of the defendant with the commission of the offense."

In Bond v. State, 54 Okla. Cr. 39, 14 Pac. (2d) 425, this court said:

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect defendant with the commission of the offense, it will uphold the verdict."

Every circumstance and every fact from the time the negroes were at the house of the defendant the night of the alleged larceny of the cotton seed, up to and including the time of the defendant's arrest, corroborates the negro Slick as to the part the defendant took in the larceny of the cottton seed. The testimony of the witness who examined the tracks of the truck and examined the surroundings at the defendant's barn all tend to connect the defendant with participating in the taking of the cotton seed, and followed up to the sale of the cotton seed the following morning at the cotton seed mill. There is sufficient corroboration of the accomplice's testimony. Bond v. State, supra, and authorities therein cited.

It is next urged by the defendant that the testimony is insufficient to sustain a conviction. Section 3062, O. S. 1931, reads as follows:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound,

nevertheless, to receive the law which is laid down as such by the court."

This court has repeatedly held that the jury is the exclusive judge of the weight of the evidence, and, if there is a clear conflict in the evidence, or if it is such that different inferences can be properly drawn from it, this determination will not be interfered with unless it is clearly against the evidence or appears to have been influenced by passion or prejudice. In this case there is nothing in the record to indicate that the verdict was influenced by passion or prejudice. There is a direct conflict in the evidence in this case which is a question for the jury to determine. Under the proper instructions of the law in this case the jury found against the defendant, and following the former rulings of this court the verdict will be sustained. Taylor v. State, 21 Okla. Cr. 351, 207 Pac. 746; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Parnell v. State, 39 Okla. Cr. 361, 265 Pac. 660.

The defendant was accorded a fair and impartial trial. The court correctly advised the jury as to the law covering all the facts in the case. There is no legal reason given by the defendant in this case why the court should set aside the verdict of the jury based upon the testimony contained in the record. The defendant's conduct the night the seed were stolen, before they were stolen, and the next morning has been carefully studied and considered, and this court is compelled to say that there is sufficient testimony in the record to sustain the conviction of the jury and that there is no error in the record sufficient to warrant the court in reversing the case.

The judgment is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.